**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| KEITH V. HARNED, | * | |
| Petitioner, | * | |
| | | CASE NO. 7:00-CR-12 WLS |
| v. | * | 28 U.S.C. § 2255 |
| | | CASE NO. 7:08-CV-90033 WLS |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

**REPORT AND RECOMMENDATION**

A seventy-two count indictment returned in this court on May 16, 2000, charged Petitioner Harned and other defendants with offenses related to the operation of a "Ponzi scheme to sell promissory notes with no source of income other than the investors' funds" through their company, GFI. *United States v. Cawthon*, No. 02-12360, slip op. at 2 (11th Cir. Aug. 6, 2003)(per curiam). Specifically, Petitioner Harned was charged in Count One with Conspiracy to Defraud, Counts Two through Six and Counts Thirty-six through Forty with Mail Fraud, Counts Forty-one through Forty-seven with Wire Fraud, Counts Thirty-three through Thirty-five and Counts Forty-eight through Fifty-one with Securities Fraud, and Count Fifty-two with Conspiracy to Launder the Proceeds of an Unlawful Activity. (Doc. 467, p. 2). Petitioner Harned was arraigned on May 31, 2000 and pled not guilty. (Doc. 23). Petitioner, along with his co-defendants, was tried from January 22, 2002 to January 31, 2002, and found guilty on all counts charged. (Doc. 219). On April 4, 2002, Petitioner Harned was sentenced to a total term of imprisonment of 210 months, to be followed by three

years of supervised release, and was ordered to pay restitution in the amount of $2,157,776.06. (Doc. 257).

Petitioner Harned timely appealed his conviction, which was affirmed by the United States Court of Appeals for the Eleventh Circuit on September 9, 2003, except for remand for re-sentencing as to Count Fifty-two. (Doc. 317). Petitioner was re-sentenced on January 7, 2004, as to Count Fifty-two to ultimately the same total term of imprisonment of 210 months, three years of supervised release, and restitution in the amount of $2,157,776.06. (Doc. 343). Petitioner appealed his re-sentencing, with the Circuit Court affirming the same on October 13, 2006. (Doc. 391). Thereafter, on October 21, 2008, Petitioner filed a Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Docs. 466, 467).

## Discussion of Petitioner's Claims

**I.     The recent Supreme Court decision in *U.S. v. Santos* requires Harned's Money Laundering conviction be vacated as he is actually innocent of money laundering or conspiracy to commit the same in violation of 18 U.S.C. § 1956(a)(1)(A)(i) & (h).**

In his first claim of error, Petitioner argues that pursuant to the holding in *United States v. Santos,* which defined the term "proceeds" as found in 18 U.S.C. § 1956, he "stands convicted of an act that was not criminal" and that he is entitled to have his money laundering conviction as found in Count 52 of the indictment vacated. (Doc. 467, p. 8,9).

In *Santos,* the Court weighed "whether the term 'proceeds' used in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), referred to 'receipts' or 'profits.' " *United States v. Santos,* 128 S. Ct. 2020, 2022 (2008). At issue in *Santos* was an illegal gambling operation,

and the defendant was convicted of money laundering in violation of 18 U.S.C. § 1956. *See id.* at 2022-23.  A plurality of the Justices found that the term "proceeds" was ambiguous and, applying the rule of lenity, concluded that the term means "profits," and not "gross receipts." *See id.* at 2023-25. Under the plurality's view, "to establish the proceeds element under the 'profits' interpretation, the prosecution needs to show ... that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction." *Id.* at 2029.

Carefully analyzing the Supreme Court's decision in *Santos*, the Eleventh Circuit Court of Appeals upheld the conviction and sentence of a defendant who was convicted of money laundering in violation of 18 U.S.C. § 1956, holding that:

> *Santos* has limited precedential value. Three parts of Justice Scalia's four-part opinion are for a plurality of justices, and those parts do not state a rule for this case. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....' " The narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking.

*United States v. Demarest,* 570 F.3d 1232, 1242 (11th Cir. 2009).  The Eleventh Circuit rejected Demarest's argument that he did not launder "proceeds" of illegal activity, because the monies at issue were the "receipts" from the sale of a yacht, not profits. The Eleventh Circuit found that because *Santos* was decided by a plurality of the Supreme Court, its

3

narrow holding regarding proceeds applied only to cases involving gambling operations, and not, as in that case, drug trafficking. It would follow, then, that the holding in *Santos* does not apply to money laundering cases, either.

Of note, but not applicable to Petitioner's case, is that on May 20, 2009, President Obama signed into law the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which, in relevant part, amends 18 U.S.C. § 1956 by adding subsection (c)(9) to define proceeds as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); Pub. L. No. 111-21 (2)(f)(1) (May 20, 2009). The FERA legislation has effectively overruled the plurality decision in *Santos*, and any prior ambiguity as to the meaning of "proceeds" has now been resolved.

Therefore, Petitioner's claim that the holding in *Santos* rendered his conviction null and void is incorrect, and his collateral attack under *Santos* fails.

**II.   Harned is actually innocent of money laundering or conspiracy to commit the same in violation of Title 18 U.S.C. § 1956(a)(1)(A) & (h) because the act held to constitute the money laundering offense occurred before the charged predicate offenses.**

In his second claim of error, Petitioner Harned contends that he is actually innocent of Count 52 where the act held to constitute money laundering occurred before the charged predicate offenses. (Doc. 467, p. 9). Specifically, Petitioner states that the issue is "whether the 'transaction' constituting money laundering occurred prior to or after the mail and wire fraud offenses occurred or became complete." *Id.*

4

Relying on the Eleventh Circuit decision in *United States v. Christo*, 129 F.3d 578, 579-80 (11th Cir. 1997), Petitioner contends that the underlying offense, in this case mail and wire fraud, must have produced proceeds before those proceeds could be laundered. (Doc. 467, p. 10). He further claims that the mail and wire fraud had not occurred at the time the funds were placed into the accounts of GFI, and, as such, the placement of the funds "could not have been money laundering because the predicate offenses had not yet occurred." *Id.* In response, Respondent argues that during trial, Government's Exhibit 75, a document which "set forth the procedure that was followed by the defendants as to 'each and every' sale of a GFI promissory note" established that prior to obtaining money from the victims, "at least one mailing or wiring to execute the scheme to defraud that victim would have occurred." (Doc. 535, p. 28).

The record reveals that the Court of Appeals addressed this issue, albeit indirectly, when it determined that "[b]ecause the use of the mails and wires in furtherance of the fraudulent scheme completed the offenses of mail and wire fraud, the placement of the funds into GFI's accounts constituted a transaction, thereby laundering the money." *See United States v. Cawthon,* No. 02-12360, slip op. at 19 (11th Cir. Aug. 6, 2003) (per curiam). Finding no reason to disturb the findings of the appellate court, Petitioner's claim must fail.

### III. Harned's constitutional rights were violated through prosecutorial misconduct where:

    **A. The Government presented material evidence it knew, or should have known, was false, in violation of *Giglio v. United States,* 405 U.S. 150 (1972).**

Petitioner next argues that the government presented evidence it knew or should have known was false, thereby committing prosecutorial conduct. (Doc. 467, p. 12). Specifically, Petitioner contends that Government's Exhibit 1D-6, a document obtained during the search of GFI's business office and which reflects the names of the officers of the company, was fraudulent, and that "by the time of the second trial, based on evidence and testimony in the first trial, the government knew GX 1-D-6 was a fraud . . . and that its deliberate use would violate the controlling principles of law set forth in *Giglio* and *Wilson*." *Id.* at 14. Petitioner further claims that Government's Exhibits S-1 through S-4 were fraudulent and improperly relied on by Government expert witness Jay Torbert, a Certified Public Accountant. Petitioner then claims that several more of the exhibits prepared and utilized by the prosecution were improperly admitted by the court. (Doc. 467, p. 16).

In *United States v. Giglio,* the United States Supreme Court held that "this Court [has] made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' . . . In *Napue v. Illinois*, we said, '(t)he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.'" 403 U.S. 150, 153 (1972) (internal citations omitted). In *United States v. Wilson*, which Petitioner also cites, the Eleventh Circuit held that "[d]ue process requires . . . [that] the Government must not deliberately use, or encourage the use of, perjured testimony." 904 F.2d 656, 659 (11th Cir. 1990).

A review of the record establishes, however, that GX 1D-6 was not "fraudulent" as was meant by the Court in *Giglio.* In this case, it was a document validly obtained by the

6

government which Petitioner contends incorrectly cited him as an officer of GFI. Even if Petitioner's contention that the company failed to follow proper corporate procedure in naming him as an officer is correct, which he contends is what makes the document "fraudulent," Exhibit GX 1D-6's use in court would not violate *Giglio.*

Petitioner also claims the testimony of Jay Torbert was false, wherein he used Exhibits GX S-1 through S-16, a series of summary charts prepared by the government to aid the court and jury in understanding how the company operated. (Doc. 467, p. 15). Petitioner claims the charts themselves were "incomplete, erroneous, not supported by the evidence and highly prejudicial." *Id.* at 16.

> **B.     The Government withheld material evidence it knew, or should have known, was favorable to the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.**

In his second claim of prosecutorial misconduct, Petitioner contends that the government failed to disclose evidence obtained in a search of co-defendants Virgil and Charlotte Womack's residence which he claims would have been helpful to his defense. (Doc. 467, p. 22).

As to claims **III(A) and (B)**, the procedural default rule states that a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994)

("Where the petitioner – whether a state or federal prisoner – failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation.").

> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Brousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 1611(1998); *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994).
> . . .
> In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all. *See, e.g., Smith v. Murray,* 477 U.S. 527, 534, 106 S.Ct. 2661, 2666 (1986); *McCoy v. Newsome,* 953 F.2d 1252, 1258 (11th Cir. 1992). . . . *See Smith v. Jones,* 256 F.3d 1135, 1145 (11th Cir. 2001)(noting "that 'the existence of cause for a procedural default must ordinarily turn on whether a prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the procedural rule' " (quoting *Murray v. Carrier,* 477 U.S. at 488, 106 S. Ct. at 2645)); *Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001).

*Lynn v. United States,* 365 F.3d 1234, 1235 (11th Cir. 2004).

As to each and every claim Petitioner has advanced in his motion to vacate with regard to prosecutorial misconduct, Petitioner's claims must fail.[1] Petitioner failed to raise any claims related to the specific issues addressed herein in his direct appeal, and, therefore, the court is without jurisdiction to review said claims.

---

[1] Petitioner did raise one claim in his direct appeal regarding improper conduct of the prosecutor, but it does not relate in any way to the claims advanced in the current motion.

**IV.     The Trial Court's conduct denied Harned his Fifth Amendment right to a fair trial.**

In this claim, Petitioner expends much effort to contend that the trial court had a "transparent bias against the defendants, which ultimately denied him his right to a fair trial. (Doc. 467, p. 30). As was discussed *supra*, however, Petitioner's failure to raise this issue during his direct appeals precludes review of the claim by this court unless he is able to establish cause for and actual prejudice resulting from said failure. *See Brousley,* 523 U.S. at 622.

On direct appeal, where the appellate court determined the court had erred, it remanded the case for resentencing and ultimately affirmed those sentences. Having failed to establish, or even acknowledge his burden to show cause for and prejudice resulting from his failure to raise this claim in his direct appeal, Petitioner's claim must fail.

**V.     Ineffective Assistance of Counsel during the trial, sentencing, and appellate stage of the proceedings:**

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749 (11th Cir. 1996). In

9

order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Fla. Dep't. of Corr.*, 290 F.3d 1318 (11th Cir. 2002). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000); *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

Petitioner has also alleged several claims of ineffective assistance of counsel as to counsel's representation of him on appeal. (Doc. 467). The Eleventh Circuit Court of Appeals has held that the *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). To prevail on such claims, a petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.*

### A. [Trial Counsel's] failure to properly object to the evidence "seized from G.F.I. pursuant to a search warrant."

In his first claim of ineffective assistance of counsel, Petitioner argues that his trial counsel was deficient in failing to assert the proper objection to documents seized from G.F.I. pursuant to the search warrant issued and served on the company. (Doc. 467, p. 66). Specifically, he contends that his counsel improperly objected to the documents "on the

ground that the government had not produced any evidence these were business records," instead of raising a hearsay objection, wherein the documents were not properly authenticated. *Id.*

This claim is without merit, however, where the Eleventh Circuit Court of Appeals made a specific finding on direct appeal that the documents at issue were properly admitted "pursuant to Rule 801(d)(2)(E) as non-hearsay evidence made during the course and in furtherance of the conspiracy." *United States v. Cawthon*, No. 02-12360, slip op. at 13 (11th Cir. Aug. 6, 2003) (per curiam). Unable to establish that his counsel's performance was deficient, Petitioner's claim must fail.

> **B.    [Trial counsel's] deficient performance continued on appeal by his mishandling evidence issues compounding the evidence problem.**

As noted *supra*, Petitioner was represented by the same counsel at trial and on appeal. Because no error was found with regard to the admission of evidence in the previous claim with regard to his trial counsel, it follows that there can be found no error as to counsel's actions on appeal. Petitioner's claim of ineffective assistance of appellate counsel as to this issue is, therefore, without merit.

> **C.    [Trial Counsel's] failure to object to the prosecutor's misconduct which included the government's knowing use of perjured testimony and false evidence in violation of *Giglio v. United States*, 405 U.S. 150 (1972).**

In this claim, Petitioner contends that his counsel was ineffective for failing to object to the use of the documents he claims are fraudulent as found in Issue III (A), *supra*. (Doc. 467, p. 81). As was noted there, however, Petitioner failed to establish that GX 1D-6 was

11

a fraudulent document and he procedurally defaulted that entire claim. Therefore, Petitioner is unable to establish that his counsel was constitutionally ineffective for failing to object to said evidence.

> **D.  Failure to request a severance between trials when it became apparent that Defendants were not similarly situated.**

Petitioner next argues that following the first trial in this matter, wherein a mistrial was declared, his counsel should have requested a severance so that he could be tried separately. (Doc. 467, p. 83). He contends that his counsel's failure to do so constitutes ineffective assistance of counsel. *Id.*

Rule 14 of the Federal Rules of Criminal Procedure states that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court **may** order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." (emphasis added). A trial court has wide discretion to grant or deny severance of a trial.

In this case, there is no evidence in the record to suggest that had Petitioner's counsel requested a severance, the same would have been granted. Furthermore, nothing in the record would indicate that the Petitioner was prejudiced by the joinder of the defendants in this matter, and, therefore, Petitioner is unable to establish ineffective assistance of counsel.

> **E.  [Trial Counsel's] failure to raise objections to the absence of a special verdict form at trial or appeal, and his failure to argue the absence of the special verdict form mandated that Harned's sentence could not exceed the statutory maximum for the § 1957 violation of the dual-object conspiracy.**

Petitioner next argues that his trial counsel was ineffective for failing to request a

special verdict form as to the money laundering charge in Count 52 where he was sentenced to 210 months on that Count. (Doc. 467, p. 86). Petitioner relies on the holdings in *Edwards v. United States*, 523 U.S. 511 (1998) and *United States v. Riley*, 142 F.3d 1254 (11th Cir. 1998), to assert that absent a special verdict form in this case, his sentence could not exceed ten years. *Id.*

Petitioner is correct in his assertion that a violation of 18 U.S.C. § 1956 carries a statutory maximum penalty of twenty years, and a violation of 18 U.S.C. § 1957 carries a maximum penalty of ten years. He is further correct in his assertion that he was charged in Count 52 with violations of both § 1956 and § 1957. However, as the government noted in its response to Petitioner's motion to vacate, the law of the Circuit, as found in *United States v. Dennis,* 786 F.2d 1029 (11th Cir. 1986), used to be that a special verdict form was not required. (Doc. 536, p. 26). It was not until August of 2002, when the Court decided *United States v. Allen,* 302 F.3d 1260 (11th Cir. 2002), that a special verdict form, and finding by the jury with regard to the object of the conspiracy, is required. *See also United States v. Black*, 373 F.3d 1140, 1146 nn.3 and 4 (11th Cir. 2004).

Furthermore, in its charge to the jury, the court in this matter specifically referenced the charge of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and the jury convicted Petitioner of the same. Petitioner appealed his conviction and the Eleventh Circuit Court of Appeals remanded the case for re-sentencing "where the district court failed to find beyond a reasonable doubt which offense in the multiple-count indictment the defendants conspired to commit." (Doc. 446-3, p. 12). At his resentencing, the court specified that it

13

found that the defendants "conspired to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A). That violation was an object of Count 52 which charged a conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h)." (Doc. 342). That sentence was affirmed by the Eleventh Circuit on Petitioner's second appeal. *See United States v. Lindsey, et al.*, 200 Fed App'x 902, 910 (11th Cir. 2006) (per curiam).

Finding no deficient performance on counsel's part for failing to raise this issue, there can be no ineffective assistance of counsel. Therefore, Petitioner's claim is without merit.

### F. [Trial Counsel's] failure to argue to vacate the money laundering count after the appeals court, and the district court, held that an act which occurred prior to the underlying offense conduct constituted money laundering.

Petitioner raised this claim in Issue II, *supra*, and it was determined that he was not entitled to relief on said claim. As such, it follows that his counsel could not have been ineffective for failing to raise the claim.

### G. [Trial Counsel's] failure to conduct a pre-trial investigation into known leads which would have bolstered his defense.

Petitioner next argues that his counsel was ineffective for "completely abrogat[ing] his duty as counsel by failing to investigate or follow-up on important issues based on known information and materials obtained from the government that would have been favorable, bolstered the defense, and provided mitigating evidence." (Doc. 467, p. 92).

The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994):

> The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far

> between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). .... When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices ... that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. Therefore, to prevail on an ineffective assistance of counsel claim, a defendant would have to show that his trial attorney's performance fell below an objective standard of reasonableness and that these unprofessional errors prejudiced the defense. To show prejudice, the § 2255 petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Petitioner has failed to demonstrate any deficiency in his counsel's performance in his claim that counsel failed to investigate or "follow up" on evidence Petitioner deemed necessary. The court cannot conclude that trial counsel's trial strategy was deficient or that the "investigation" Petitioner claims was not executed would have changed the outcome of Petitioner's trial. As such, there is no merit in this claim.

      **H.**    **Cumulative effect of trial counsel's errors during the trials, sentencings, and appeals denied Harned of his right to a fair trial.**

Petitioner next claims the cumulative effect of each of his counsel's errors during the course of his criminal proceedings effectively denied him his right to a fair trial. (Doc. 467, p. 96). Finding no merit to any of Petitioner's ineffective assistance of counsel claims, however, Petitioner's claim must fail.

**VI.**    **The confluence of the Government's misconduct, trial court's errors, and**

**counsel's deficient performance worked together to deny Harned a fair trial.**

Following the logic as cited in the previous issue, Petitioner's claim is wholly without merit.

**VII.  (Perry's Issue 8).  Trial and Appellate Counsel were ineffective for failing to challenge jury instructions issued by the court concerning the definition of "scheme to defraud."**

Petitioner next argues that his counsel was ineffective at trial and on appeal for failing "to raise an objection/propose a proper instruction" as to the definition of the term "scheme to defraud" in the jury instructions given to the jury, thereby "affect[ing] his right to present an effective defense to the charge," pursuant to the holdings in *United States v. Brown*, 79 F.3d 1550 (11th Cir. 1996) and *United States v. Svete*, 521 F.3d 1302 (11th Cir. 2008). (R-457, p. 13).   In *Svete,* the Court held that:

> "In this Circuit, mail fraud requires the government to prove that the defendant intended to create a scheme 'reasonably calculated to deceive persons of ordinary prudence and comprehension.' . . . This burden is not reflected in the current Eleventh Circuit pattern jury instruction for mail fraud. Pattern Instruction 50.1 merely states that a 'scheme to defraud' is 'any plan or course of action intended to deceive or cheat someone out of money or property by means of false or fraudulent pretenses, representations, or promises.' *Pattern Jury Instructions (Criminal Cases)*, No. 50.1 (11th Cir. Jud. Council 2003 rev.) (Mail Fraud). Because the definition does not include the reasonable person standard as articulated in *Brown*, Pattern Instruction 50.1 is deficient. (some citations omitted)."

*Svete,* 521 F.3d at 1310.  However, after a rehearing *en banc*, the Eleventh Circuit ultimately determined that "we overrule our holding in *Brown* that the offense of mail fraud requires proof of a scheme calculated to deceive a person of ordinary prudence," thereby vacating their previous opinion.  *United States v. Svete*, 556 F.3d 1157, 1166 (11th Cir. 2009) (en

16

banc). In a recent decision with an identical issue, the Court specifically stated that:

> [Defendant] argues that the district court's instruction ran afoul of *United States v. Brown,* 79 F.3d 1550 (11th Cir.1996), which held that mail fraud requires a scheme reasonably calculated to deceive persons of ordinary prudence. That argument is derailed at the station because *Brown*, to the extent it would apply, is no longer good law in this circuit. *See United States v. Svete,* 556 F.3d 1157 (11th Cir.2009) (en banc) (overruling *Brown* and holding that the offense of mail fraud does *not* require proof of a scheme calculated to deceive a person of ordinary prudence).

*United States v. Christou*, 334 F. App'x 950 (11th Cir. 2009). As such, Petitioner's counsel, both at trial and on appeal, could not be found to be ineffective for failing to propose a "proper" jury instruction or objecting to the instruction given by the court.

## VIII. Supplemental Pleadings

On February 24, 2009, Petitioner filed what he entitled "Supplemental Pleadings to the Previously filed Motion Under to Title 28 U.S.C. § 2255." In that supplement, Petitioner apparently seeks to supplement his Issue III and add two entirely new claims of ineffective assistance of counsel. (Doc. 482). As to the new claims, they were obviously filed outside of the one year AEDPA limitations period and do not relate back to any of his original claims. As such, Petitioner's attempt to add new claims at this juncture will not be allowed, nor will they be reviewed on their merits.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Perry's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be Denied. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN FOURTEEN (14)

DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 19th day of March, 2010.


                                        S/ G. MALLON FAIRCLOTH
                                        UNITED STATES MALLON FAIRCLOTH

eSw